IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | : | |
|---|---|---|
| **DARNEESE CARSON,** | : | |
| | : | CASE NO. |
| Plaintiff, | : | 3:11-CV-65 (CAR) |
| | : | |
| v. | : | |
| | : | |
| **BELK, INC.,** | : | |
| | : | |
| Defendant. | : | |

**ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Currently before the Court is Defendant Belk, Inc.'s Motion for Summary Judgment [Doc. 19]. Through the present motion, Defendant asserts that it is entitled to judgment as a matter of law because the claims brought by Plaintiff Darneese Carson pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., are not supported by sufficient evidence to raise a genuine issue of material fact for a jury to decide. Upon consideration of the briefs and evidence submitted, and for the reasons discussed below, the Court agrees. Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED.**

1

## Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party, or if reasonable minds could not differ as to the verdict.  <u>See id.</u> at 249-52.  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, but the Court must not make credibility determinations or weigh the evidence.  <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  <u>Celotex Corp.</u>, 477 U.S. at 323 (internal quotation marks omitted).  "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a

material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party must then go beyond the pleadings and point to specific evidence raising a genuine issue of material fact, or otherwise show that the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26. In the employment discrimination context, unverifiable conjecture, unsupported opinions, and unsubstantiated allegations of coworkers cannot suffice as viable summary judgment evidence, especially where contradictory of highly credible and authenticated record evidence. Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs, 162 F.3d 653, 658-59 (11th Cir. 1998).

## Background

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows. Defendant, a well-known national retailer, has a store in Athens, Georgia. Typically, Defendant divides its stores into various areas, which sell different products. The areas, managed by area sales managers, are further subdivided into departments, known as counters, which are managed by counter managers.

Defendant organizes its Human Resources ("HR") department into regional offices, each of which manages HR matters for all retail stores within its region. In addition, each store may have one or more human resource assistants who provide direct administrative support to the regional HR offices. Defendant's Southern

Regional Office manages HR matters at the Athens store. During Plaintiff's employment with Defendant, Stephen Crosby ("Crosby") was the Southern Division HR Manager, and Dorothy Curry ("Curry") was the Human Resources Assistant at the Athens store.

Although the parties dispute the finer points, it is important to discuss Defendant's cosmetics division, where Plaintiff was initially hired to work. Defendant asserts that in this area, it works directly with representatives for each brand of cosmetics. Brand representatives evaluate the performance of the employees at their counter, and often contribute to the employees' compensation. Accordingly, Defendant tries to ensure that each associate sells only one cosmetics brand at a time. Where a brand representative is unhappy with the performance of an employee, Defendant will try to reassign that individual. Plaintiff disputes this assertion by anecdotally noting at least one fellow employee who sold one or more cosmetics brands at a time. Plaintiff also notes that she was never evaluated by a brand representative and that only Defendant evaluated her performance. Although this factual dispute is essentially irrelevant, for purposes of summary judgment, the Court will accept Plaintiff's version of the facts.

### a. Plaintiff's Employment with Defendant

On November 8, 2007, Plaintiff, who is African American, was hired as a full-time employee at the Athens store. She was assigned to work as a beauty advisor at the

Estee Lauder counter. At the time Plaintiff was hired, Mark Fuhr ("Fuhr") was the store manager. Fuhr was subsequently replaced in August 2008 by Dawn Blankenship ("Blankenship"), who remained the store manager for the remainder of Plaintiff's employment.

As a beauty advisor, Plaintiff was required to meet certain sales goals. In May 2008, the parties agree that Plaintiff failed to meet Defendant's sales expectations. Although the parties dispute the consequences of this, it is clear that Plaintiff received some kind of discipline in June 2008 and was cautioned about her job performance. In addition, Defendant asserts that the Estee Lauder representative was unhappy with Plaintiff's performance, although Plaintiff disputes this.

Although the extent and nature of Plaintiff's health problems have not been disclosed to the Court, it appears that Plaintiff began experiencing seizures and other symptoms in summer 2008. Both parties agree, however, that Plaintiff never experienced a seizure while at work, and both parties agree that she never requested an accommodation during her employment with Defendant.

In July 2008, as a result of her symptoms, Plaintiff requested information regarding a medical leave of absence. On July 27, 2008, Defendant granted Plaintiff's request for a leave of absence and Curry, the HR Assistant, provided her with medical certification forms, including a fitness-for-duty certification and instructions on how to complete the forms. Most relevantly, the written instructions specified the following:

5

> [Y]ou will be required to present a fitness for duty certificate before returning to work. Your return to work may be delayed until the certification is provided.
>
> . . .
>
> It is our policy to return associates to the same position left whenever possible and practical. However, a return to the same or equivalent (substantially identical) position can only be guaranteed to associates who return to work immediately following a qualified FMLA leave and who are not "key employees."
>
> . . .
>
> With respect to associates returning to work from any non-FMLA approved leave, reasonable effort will be made to place the associate in their [sic] former position or an alternate open position for which they [sic] are deemed qualified at the location from which leave was taken. If neither of such positions is available, the associate may be granted an extension of their [sic] leave for up to four weeks. In no event, however, may the leave be extended beyond the nine-month period allowed for a Medical Leave.

[Doc. 19-4, p. 126-27]. Plaintiff signed an acknowledgement of these forms at the time she received them.

Initially, a human resources employee mistakenly gave Plaintiff Family and Medical Leave Act ("FMLA") information, believing Plaintiff to be eligible.[1] When Blankenship took over management on August 1, 2008, she discovered the mistake and notified Plaintiff that Plaintiff was still on medical leave, but that she did not qualify for

---

[1] Plaintiff asserts that there was no mistake regarding FMLA. However, Plaintiff provides no support in the record for this assertion and does not dispute that she started work in November 2007. FMLA clearly requires employment for 12 months before an employee becomes eligible for leave under the act. 29 U.S.C. § 2611(2). Thus, since Plaintiff had not worked for Defendant for 12 months at the time she took her leave, she could not have qualified for FMLA leave.

6

FMLA leave.  Blankenship's letter to Plaintiff stated, "Fitness-for-duty certification is required before returning to work[,] and there is no guarantee of job reinstatement." [Doc. 19-4, p. 125].

On September 11, 2008, Plaintiff's physician sent Defendant a return-to-work certificate indicating a return date of September 17, 2008, with no restrictions indicated. In support of this assertion, Plaintiff submitted an exhibit consisting of a fax cover sheet and a document entitled "Certificate for Return to Work/School" signed by her treating physician [Doc. 28-2].  On the fax cover sheet, the date September 11, 2008, appears. There is also a handwritten note from Dot Curry, the HR Assistant at the Athens store, that reads, "We need the 'return to work' authorized on our form."  The handwritten note is not dated.  It is undisputed that the September 11, 2008, form is not the form used by Defendant.

On September 12, Plaintiff contacted Blankenship and inquired about returning to work.  Blankenship informed Plaintiff that a fitness for duty certification was required before she could return and that Plaintiff had not yet satisfied that requirement.  Consequently, on September 15, 2008, Plaintiff's doctor faxed Defendant a completed and signed fitness-for-duty certification.  The form, signed on September 10, 2008, showed Plaintiff's return date as Wednesday, December 3, 2008. [Doc. 19-4, p. 128].  As a result of this notation, Blankenship contacted Plaintiff and told her that she could not return to work before December 3, 2008.

7

On September 16, 2008, Plaintiff contacted Blankenship and stated that the return date on her form was incorrect, and Plaintiff's doctor would be sending a new certification with an earlier date. The same day, Defendant received two copies of the same form it received on September 10, 2008, with a handwritten notation of "10/18/08 Return to work," in different handwriting, beside the original date of December 3, 2008. [Doc. 19-4, p. 129-30]. Otherwise, the form was the same.[2]

In response, Blankenship contacted Plaintiff and notified her that the second two forms were not sufficient and that Defendant would require a new and updated fitness-for-duty certification signed by Plaintiff's physician. Blankenship also stated that Defendant had a part-time position in the Children's department that Plaintiff could fill if the required certification was provided.

Plaintiff did not send a new form. On October 13, 2008, although Defendant had not received an updated fitness-for-duty form, Blankenship again contacted Plaintiff to notify her that a full-time position in the Men's Department was available if Plaintiff's physician would provide a new fitness-for-duty certification prior to December 3, 2008. Plaintiff left Blankenship a message in response, noting that she had faxed a certificate before, that her doctor charged $100 per page for any paperwork, and that this amount was a serious financial burden. Plaintiff also indicated that when she returned, she

---

[2] Plaintiff states that her physician sent the second two forms in order to clarify Plaintiff's return to work date. Defendant disputes this, asserting that Plaintiff has failed to show that her physician sent the forms as clarification. For purposes of summary judgment, the Court will accept Plaintiff's version of the facts.

8

would only be available on Mondays and Wednesdays because she was unable to drive and had to arrange transportation.

Defendant had not received a new certification form by November 4, 2008, and Plaintiff still had not returned to work. On November 4 and 6, 2008, Blankenship again left messages for Plaintiff offering her the Men's Department position provided she produced a new certification form. Plaintiff, in turn, left two messages for Blankenship accepting the position and asking Blankenship to fax the schedule to her attorney. Plaintiff did not produce a new fitness-for-duty certification.

Finally, Blankenship sent Plaintiff a letter, dated November 14, 2008, again requesting a fitness-for-duty certification and giving Plaintiff a deadline of November 24, 2008, to comply with the certification requirement. When Plaintiff did not comply with the deadline, Defendant considered her to have voluntarily resigned. Although Defendant asserts that it considered her resignation effective as of November 24, 2008, Plaintiff asserts that Defendant did not consider her employment terminated until December 3, 2008. The Court does not find this difference material, but for summary judgment purposes, the Court will accept Plaintiff's version of the facts.

Plaintiff filed a charge of discrimination with the EEOC and after receiving her right to sue letter, she filed suit in this Court. Plaintiff alleges she was discriminated against based on her race and disability. Defendant has now moved for summary judgment on all of Plaintiff's claims.

9

## Discussion

### A. Plaintiff's Title VII Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a).  Here, Plaintiff asserts that Defendant's refusal to allow her to return to work was discriminatory because it was based on her race.

Plaintiff seeks to avoid summary judgment based on what she alleges to be direct evidence of discrimination, but no such evidence exists.  "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989).  Plaintiff states that when she inquired about advancing to a management position, the store manager at the time, Fuhr, responded, "[Y]ou people just aren't qualified to do that kind of work."  [Doc. 19-4, 28:2-21].  Plaintiff asserts that this statement constitutes direct evidence.  However, this statement is subject to multiple interpretations, and at most this statement suggests that discrimination could be inferred by the trier of fact.  In contrast, with direct evidence, "the fact that the evidence exists, by itself, *proves* the discrimination." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 n. 6 (11th Cir. 1987) (emphasis in original).

In addition, while Fuhr's statement could be evidence of discrimination, it is undisputed that Fuhr was no longer an employee at the time Plaintiff went on medical leave and at the time Defendant considered Plaintiff to have resigned from her position. Plaintiff seems to concede this in her response, stating, "Said statement *buttresses* Ms. Carson's observation that racial discrimination is pervasive throughout Defendant's organization." [Doc. 29, p. 3] (emphasis added). Thus, because there is no direct evidence in this case, Plaintiff must prove discrimination through circumstantial evidence.

Claims of race discrimination based on circumstantial evidence are evaluated under the familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To prove a disparate treatment claim under Title VII or § 1981, Plaintiff must first establish a prima facie case. To do so, she must show: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by, or treated less favorably than, someone similarly situated outside her protected class. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n. 6 (1981). The employer then has the opportunity to articulate a legitimate, nondiscriminatory reason for its action. Finally, the burden shifts back to Plaintiff to produce sufficient evidence to allow a fact finder to conclude that the employer's reasons were merely pretext for discrimination. Wascura v. City of South Miami, 257 F.3d 1238, 1242-43 (11th Cir. 2001).

**(1) Plaintiff's Prima Facie Case**

The Court finds that Plaintiff has failed to establish a prima facie case of discrimination. As a threshold matter, Plaintiff has met the first three prongs of the prima facie case. She is a member of a protected class, and for purposes of this Motion, Defendant concedes that she was qualified for her position and that she suffered an adverse employment action when she was not allowed to return to work. Defendant does argue that Plaintiff cannot establish the final prong of her prima facie case.

Plaintiff must show that she was either (1) replaced by someone outside her protected class, or (2) treated less favorably than someone similarly situated outside of her protected class. <u>Texas Dep't of Cmty. Affairs</u>, 450 U.S. at 254 n. 6 (1981). With respect to this last element, "the individuals must be similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate civil rights law." <u>Jackson v. Bellsouth Telecomm.</u>, 373 F.3d 1250, 1273-74 (11th Cir. 2004) (internal citations and quotations omitted). Plaintiff asserts that she was replaced by a Caucasian female. In support of this assertion, Plaintiff notes that Defendant changed this Caucasian employee's schedule from part-time to full-time during Plaintiff's absence, and asserts that Defendant "produced a confidential document" evidencing this change. [Doc. 29, p. 4]. However, beyond these conclusory assertions, Plaintiff fails to provide any information regarding this individual and, in fact, does not even provide her name.

12

Defendant indicates that Plaintiff may be referring to employee Pam DiCarlo. This is consistent with Plaintiff's argument, which she supports by pointing to Defendant's position statement to the EEOC that lists DiCarlo by name. The position statement indicates that DiCarlo was hired in December 2007 as a seasonal, part-time Estee Lauder beauty advisor. Plaintiff contends that the statement also supports Plaintiff's claim that DiCarlo was moved to full-time at the Estee Lauder counter after Plaintiff left. However, the position statement actually contradicts Plaintiff's assertion. Although the statement does state that DiCarlo began working full-time, it also indicates that DiCarlo split her time between the cosmetics and fragrances division and was never made a full-time beauty advisor in the cosmetics department.

To determine whether a non-minority replaces a particular employee, "where [that] employee's position is clearly delineated and responsibilities are well defined, the court should focus on the person that physically replaced the employee or consider whether that job title was actually filled." Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) (citing Hawkins, 883 F.2d at 977). Here, DiCarlo clearly had different job duties and different obligations than Plaintiff. Defendant states DiCarlo was already an employee when Plaintiff left and thus could not have replaced Plaintiff. Further, Defendant notes that DiCarlo was never made a full-time beauty advisor. Ultimately, Plaintiff's conclusory assertions simply are not sufficient to show DiCarlo as a valid comparator. Although Plaintiff cites several "confidential documents" in

13

support of her arguments, she has failed to provide these documents to the Court, and the Court will not speculate as to their contents. Unverifiable, anecdotal testimony is not sufficient to defeat a motion for summary judgment. Bogle, 162 F.3d at 658. As Plaintiff has pointed to no other comparators and has produced no other evidence, she has failed to establish a prima facie case.

### (2) Defendant's Legitimate, nondiscriminatory reason

Even assuming Plaintiff has established a prima facie case, Plaintiff nevertheless has failed to rebut Defendant's legitimate, nondiscriminatory reason for not allowing Plaintiff to return to work. As noted above, once a prima facie case has been established, Defendant may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). Defendant has only the burden of production, and does "not need to persuade the court that it was motivated by the reason." Id. Here, Defendant has stated that Plaintiff's return to work was conditioned on her producing a complete and accurate fitness-for-duty certification, and that she was considered terminated upon her failure to do so. Defendant has met the burden of production, and thus Plaintiff is saddled with proving that Defendant's reasons were mere pretext for unlawful discrimination.

**(3) Pretext**

Assuming *arguendo* that Plaintiff stated a prima facie case, she has failed to show Defendant's reason was pretextual. Plaintiff asserts that Defendant's failure to return her to work was pretextual because Defendant refused to accept the return to work certifications Plaintiff provided. Plaintiff argues that Defendant has not shown consistent and established standards for evaluating the certification required. However, Plaintiff has failed to produce any evidence that Defendant's refusal to accept her certifications was based on her race.

Defendant has shown that it informed Plaintiff of the information required for her to return to work, and that she was required to provide a new form with the correct date. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, as long as the reason is one that might motivate a reasonable employer." Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (citation omitted). Even if Defendant's standards regarding the certification were arbitrary, Plaintiff has not shown that the arbitrariness was because of her race. Thus, Plaintiff's claim must fail.

**B. Plaintiff's ADA Claim**

The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C.

15

§ 12112(a).  To prove a disability discrimination claim under the ADA, Plaintiff must first establish a prima facie case.  To do so, Plaintiff must show that: (1) she is disabled within the meaning of the statute; (2) she is a "qualified individual"; and (3) she was subjected to unlawful discrimination based on her disability.  Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000).  Once Plaintiff establishes a prima facie case, the case follows the familiar burden-shifting framework.  Wascura v. City of S. Miami, 257 F.3d 1238, 1242-43 (11th Cir. 2001).

For purposes of summary judgment, Defendant concedes that Plaintiff is disabled within the meaning of the statute and that she is a "qualified individual." Defendant only challenges the final prong of Plaintiff's prima facie case, arguing that she cannot demonstrate that she was subjected to unlawful discrimination based on her disability.  In support of her claim, Plaintiff asserts the same arguments used in support of her Title VII claim – that Defendant used arbitrary standards in evaluating her fitness-for-duty form.  Specifically, she argues that Defendant made it "impossible for her or any other person on medical leave due to a disabling condition to be deemed eligible to return to work." [Doc. 29, p. 7].  However, Plaintiff has again failed to provide any evidence whatsoever in support of this conclusory assertion, and has failed to provide any evidence connecting it with her disability.  Accordingly, her ADA claim must also fail.

**Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED.**

SO ORDERED, this 21st day of August, 2012.

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

AES/ssh